UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN J. URBAN,

        Plaintiff,

        v.                               Case No. 23-C-1445

SUE BRINKMAN,
Human Resources Director, and
TOWN OF GRAND CHUTE,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING DEFENDANTS' MOTION FOR SANCTIONS

Plaintiff John J. Urban filed this action against Sue Brinkman, the Town of Grand Chute's Human Resources Director, after he was terminated from his employment as a foreman in the Town's Utility Department. In his original complaint, Urban asserted three claims under 42 U.S.C. § 1983: violation of his Due Process rights under the Fifth and Fourteenth Amendments, violation of his right to freedom of speech under the First Amendment, and false arrest under the Fourth Amendment. Urban also asserted in his original complaint claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, for unpaid overtime wages and retaliation. In response to a Rule 12(b)(6) motion to dismiss filed by Ms. Brinkman, Urban filed a First Amended Complaint which added the Town as a defendant and restated the claims in his original complaint. The Amended Complaint also added claims for breach of contract and defamation. The court has jurisdiction over his federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. The case is now before the Court on the defendants' motions to dismiss for failure to state a claim and for sanctions. For the following

reasons, the defendants' motion to dismiss will be granted and their motion for sanctions will be denied.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Rule 8 mandates "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). A complaint must have factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, he must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations marks omitted) (quoting *Twombly*, 550 U.S. at 556, 570); *see also Yasak v. Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

## ANALYSIS

### A. Due Process Claim

Urban asserts that his due process rights under the Fifth and Fourteenth Amendment were violated by Brinkman's workplace investigation because she had a conflict of interest, there was

2

lack of notice relating to the multiple investigatory meetings, he was terminated without reference to discipline history, and his replacement was hired before his grievance process was complete. Because the Fifth Amendment has no application here, since that amendment "does not limit actions of state officials," *Huffaker v. Bucks Cnty. Dist. Attorney's Off.*, 758 F. Supp. 287, 290 (E.D. Pa. 1991) (citing *Bartkus v. Illinois*, 359 U.S. 121 (1959)), that claim is dismissed, and the court will address Urban's due process claim under the Fourteenth Amendment.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a Fourteenth Amendment claim for the deprivation of a property interest without due process, a plaintiff must [allege] that (1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943–44 (7th Cir. 2010) (citing *Moss v. Martin*, 473 F.3d 694 (7th Cir. 2007)).

When a public employee is fired, "the discharged employee must first establish that he or she had a property interest in continued employment. To determine whether such a property interest exists, we must turn to state law." *Schultz v. Baumgart*, 738 F.2d 231, 234 (7th Cir. 1984). In Wisconsin, "a dichotomy exists between employment 'at-will' and employment which can be terminated only 'for cause.'" *Beischel v. Stone Bank Sch. Dist.,* 362 F.3d 430, 436 (7th Cir. 2004). To receive due process protections, "a plaintiff generally is required to show that the terms of his employment provide for termination only for cause or otherwise evince mutually explicit understandings of continued employment." *Kvapil v. Chippewa Cnty., Wis.*, 752 F.3d 708, 713 (7th Cir. 2014) (internal quotation marks omitted) (citing *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011)). "[A]t-will employees are terminable at will, for any reason,

3

without cause and with no judicial remedy." *Id.* (quoting *Bammert v. Don's Super Valu, Inc.*, 2002 WI 85, ¶ 8, 254 Wis. 2d 347, 646 N.W.2d 365). "Wisconsin has a strong presumption in favor of employment at-will." *Id.* (citation omitted).

Urban contends that he had a property interest in continued employment based on an implied policy or custom that the Town of Grand Chute would give employees at least one chance to improve before firing them. He relies on *Forgue v. City of Chicago* to assert that an "unwritten or implied policy is sufficient to create an entitlement and protectable property interest." 873 F.3d 962, 970 (7th Cir. 2017) (citation omitted) (reversing dismissal of a procedural due process claim where a police officer was denied a retirement card in light of an allegation that the police department customarily granted such cards to virtually all retiring employees). However, *Forgue* is distinguishable from this case because any property interest in that case arose out of Illinois law, not Wisconsin law. Moreover, *Forgue* was about the denial of benefits owed to employees who retire in good standing. *Id.* The question in this case, by contrast, is whether Urban was entitled to job protections against the backdrop of Wisconsin's strong presumption in favor of at-will employment.

Under Wisconsin law, an "employer's common-law right to discharge an employee at any time without cause [is] not limited by its self-imposed policies regarding discharge." *Holloway v. K-Mart Corp.*, 113 Wis. 2d 143, 146, 334 N.W.2d 570 (Ct. App. 1983). In *Holloway*, an employer had an unwritten policy of discharging employees only after they were given three opportunities to correct the situation. *Id.* The employee, who had signed an agreement containing an express at-will provision, argued that the three-strike policy modified his agreement, which was allegedly breached when he was discharged without notice. *Id.* at 145. Despite the unwritten policy, the

court affirmed the dismissal of plaintiff's breach of contract claim because "the parties' agreement was to the contrary." *Id.* at 146.

Here, notwithstanding how it generally handled employment discipline, the Town made clear to its employees that they were at-will employees. The Employee Policy Handbook contained an express at-will provision stating that Urban's employment "is voluntary and can be terminated by the employee or the Town with or without cause, and with or without notice, at any time, unless otherwise expressly prohibited by law." Handbook ¶ 104, Dkt. No. 13-2. Indeed, the Handbook Acknowledgment and Receipt form which Urban signed on March 3, 2022 expressly provides:

> I further understand and acknowledge that this Policy Handbook is not, nor is it intended to constitute, an employment contract of any kind. I understand and agree that only the Town Administrator has the authority to enter into any agreement for employment other than at will and then the agreement will be in writing and signed by the Town Administrator. I acknowledge that I have not entered into any such individual agreement or contract by acknowledging receipt of this Policy Handbook or by following any of the provisions of this Policy Handbook.
>
> I understand that this Policy Handbook and the Acknowledgment Form do not vary or modify the at-will employment relationship between the Town of Grand Chute and me. I understand that the contents of this Policy Handbook and my compensation and benefits may be changed by the Employer at any time, with or without notice to the extent permitted by law.

*Id.* ¶ 803. Given this language, the fact that the Town had a policy of warning most employees before discharging them does not change the fact that Urban was an at-will employee.

Notwithstanding the foregoing, Urban argues that the Employee Policy Handbook's provision on discipline, which states that "[r]ules and regulation will be fairly and consistently applied and penalties will match the infraction," cabined the Town's discretion to discipline him such that it modified the nature of his employment. *Id.* ¶ 416. But while the Wisconsin Supreme Court has held that an at-will employment contract may be modified by a personnel manual, it has

"not [held] that all personnel manuals or employee handbooks will have that effect." *Ferraro v. Koelsch*, 124 Wis. 2d 154, 169, 368 N.W.2d 666 (1985) (holding that an employee handbook abrogated an at-will relationship where the language expressly provided for layoffs based on seniority, different processes for discharging employees in different groups, a progressive procedure for discipline based on the number and seriousness of rule violations, discharge only for just cause, and an employee's promise to provide two-weeks' notice of resignation in consideration). Instead, Wisconsin courts have consistently held that policies in an employee handbook "alter an established at-will employment relationship '*only when*' the policy 'contains express provisions from which it can reasonably be inferred that the parties intended to bind each other to a different employment relationship' than the established at-will relationship." *Bukstein v. Dean Health Sys., Inc.*, 2017 WI App 54, ¶ 17, 377 Wis. 2d 688, 903 N.W.2d 130 (quoting *Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 757, 601 N.W.2d 318 (Ct. App. 1999)).

In this case, a policy that provides for the consistent application of discipline can hardly be said to suggest that the parties intended to have anything other than an at-will relationship. If anything, it suggests Urban was not entitled to any distinct protections. Unlike *Ferraro*, the discipline provision in this case is stated in general terms, without an express provision for specific processes of discharging employees based on seniority or any other category. *See Wolf v. F & M Banks*, 193 Wis. 2d 439, 451–52, 534 N.W.2d 877 (Ct. App. 1995) (distinguishing *Ferraro* to conclude that an employment policy did not abrogate an at-will relationship where the employee handbook did not recite progressive procedures for discipline, did not provide that discharge may be limited to just cause, nor establish distinctions among employees and their corresponding disciplinary procedures). Moreover, unlike *Ferraro*, the Employee Policy Handbook in this case

6

expressly provided that it was not an employment contract and that it did not modify the at-will relationship. *Id.* (weighing the inclusion of a disclaimer that an employee handbook should not be construed as an employee contract in favor of a finding that an at-will relationship existed). Most importantly, unlike *Ferraro*, no provision in the Employee Policy Handbook provided that Urban's discharge was limited to just cause, nor did Urban promise in consideration that he would provide two-weeks' notice upon resignation. It follows that Urban did not have a constitutionally protected property interest and, without consideration of the second and third elements, his due process claim under the Fourteenth Amendment will be dismissed.

### B. First Amendment Retaliation Claim

Urban asserts that his complaints to Wolff were protected by the First Amendment and Defendants impermissibly retaliated against him for it. To state a First Amendment retaliation claim, "a public employee must [allege] that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter speech, and (3) his speech was at least a motivating factor in the employer's action." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (citing *Peele v. Burch*, 722 F.3d 926, 959 (7th Cir. 2013)).

"For a public employee's speech to be protected under the First Amendment, the employee must prove that (1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.'" *Id.* (quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "Determining the official duties of a

7

public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016).

Urban's retaliation claim under the First Amendment is based on two complaints that he made to Wolff. The first complaint that he brought to Wolff was that he and other utility employees were underpaid. Urban brought this complaint after unsuccessfully raising the same concern with Brinkman. However, "[a] public employee's complaints 'made directly up the chain of command to his supervisors are not protected under the First Amendment.'" *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014) (quoting *Bivens v. Trent*, 591 F.3d 555, 560 (7th Cir. 2010)) (holding that a union official's complaints to management, advocating for the interests of other union members at work, "about the collective bargaining agreement, work conditions, and labor decisions were nothing more than employee grievances not entitled to First Amendment protection"). Here, Urban was going up the chain of command with a grievance that he and his crew members were underpaid, which he felt was his responsibility as the head of his crew. He argues that "[t]he context for [his] complaint about insufficient wages was the fact that *his duties* extended beyond the normal workday." Pl.'s Br. in Opp'n at 23, Dkt. No. 21. Accordingly, though advocating for his own private interests in the form of paid wages, he was making a statement pursuant to his official duties, not as a private citizen.

The second complaint was about his superiors, whose alleged inaction and incompetence were partly responsible for the water loss issue, and the generally toxic work environment in the Public Works Department. However, "[e]mployees' statements about 'misconduct affecting an area within [their] responsibility' are considered official-capacity speech even if those employees are not ordinarily responsible for investigating misconduct." *Fehlman v. Mankowski*, 74 F.4th

872, 875 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 561 (2024) (quoting *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013)).

Here, Urban alleges that the responsibility for trying to fix the ongoing water loss issue was put on him by his superiors. Further, he complained to Wolff that his superiors' inaction and incompetence was affecting that area of responsibility. The second complaint was also official-capacity speech. Thus, Urban has not alleged that his speech was constitutionally protected and, without consideration of the second and third elements, his Frist Amendment retaliation claim will be dismissed.

### C. Fourth Amendment Claim

Urban asserts that he was falsely arrested without probable cause, in violation of the Fourth Amendment, when he attended an investigatory interview with Ms. Brinkman and Captain Collette Jaeger of the Grand Chute Police Department on October 26, 2023. Urban alleges he had been given a letter about an hour before the meeting directing him to appear in the community room of the Grand Chute Municipal Building "to face interrogation by Brinkman . . . ." Am. Compl. ¶ 68, Dkt. No. 10. Urban alleges that "The Letter provided only vague categories of violations that appeared to be copied out of the employee handbook and included such categories of potential violations as 'Destructive gossip, rumors, or innuendos' and 'Insubordination' including 'eye rolling or mocking a Supervisor; or speaking loudly or argumentatively to a Supervisor' but also including categories that could conceivably be criminal in nature such as 'Any form of dishonesty; untruthfulness and deceptive behavior including falsifying records or information; making false statements, accusations or reports; or withholding relevant information.'" *Id.* ¶ 70.

According to the Amended Complaint, Captain Jaeger was in the room when Urban arrived and "was wearing a badge on a chain around her neck, and was conspicuously armed with a semi-

9

automatic pistol and handcuffs." *Id.* ¶ 74. When Urban asked why Captain Jaeger was there, Ms. Brinkman responded that "Captain Colette Jaeger was present at the meeting to take notes." *Id.* ¶ 80. When Urban explained that he wanted to talk to a lawyer before he answered Ms. Brinkman's questions, both Ms. Brinkman and Captain Jaeger urged him to remain and answer questions. Urban asked if he was free to leave, to which Brinkman replied "If you walk out there will be consequences for refusing to do the interview." *Id.* ¶ 98. Urban alleges that he left the meeting around 10:30 a.m. claiming that he was receiving calls related to problems with the Town's sewage system. *Id.* ¶ 99. Nevertheless, he claims that Ms. Brinkman "arrested [him] by using her authority to confine [him] in the community room in combination with Police Captain Colette Jaeger." *Id.* ¶ 213.

To state a claim for false arrest, a plaintiff must adequately allege that he was arrested without probable cause. *See Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016). An arrest or, for Fourth Amendment purposes, a seizure "occurs when one's freedom of movement is terminated by the submission to a show of lawful authority or the application of physical force by officers acting in their capacity as law enforcement agents." *Driebel v. City of Milwaukee*, 298 F.3d 622, 646–47 (7th Cir. 2002). A show of authority, without any application of physical force, to which the subject does not actually submit is not an arrest. *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

"When the actions of the police do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence . . . a seizure occurs [only] if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Brendlin v. California*, 551 U.S. 249, 255 (2007) (internal quotation marks and citation omitted). "[W]hen a

person has no desire to leave for reasons unrelated to the police presence, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* (internal quotation marks and citation omitted).

In this case, Urban makes no allegation that there was any use of force during his meeting with Brinkman and Jaeger. While Captain Jaeger may have been carrying a 9mm pistol, as law enforcement offers commonly do, there is no allegation that she ever withdrew it from its holster or threatened Urban in any way. Urban's hesitancy in leaving was due not to a show of force by either of the two women but by his fear, based on Ms. Brinkman's statements, that leaving could jeopardize his employment. This is not a seizure within the meaning of the Fourth Amendment.

The only reasonable inference to be drawn from the facts alleged is that Urban was free to leave at all times. Urban came to the meeting voluntarily, after he was summoned by letter. *See Driebel*, 298 F.3d at 638 ("We reject . . . that [an employee] is seized, within the meaning of the Fourth Amendment, at the time that he is ordered to report for questioning at a designated, centralized area"). Although Brinkman told Urban that there would be consequences if he left the meeting and refused to answer questions, those consequences were entirely job-related. In fact, Urban did leave the meeting on the concocted excuse that he was needed elsewhere to deal with a problem with the Town's sewage system. This was neither an arrest nor a seizure within the meaning of the Fourth Amendment. Urban's Fourth Amendment claim is therefore dismissed.

### D. Fair Labor Standards Act (FLSA) Claims

Urban alleges that the Town violated his rights under the FSLA. He claims that he was retaliated against by the workplace investigation, in violation of the FLSA, for complaining to Brinkman about his wages and those of the Utility and Streets Departments' employees. The

FLSA requires employers to pay minimum wages and overtime to nonexempt, hourly employees. *See* 29 U.S.C. §§ 206–207. Further, the FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." *Id.* § 215(a)(3).

"To state a retaliation claim under this provision, a plaintiff must plausibly allege that he engaged in activity protected under the Act, his employer took an adverse employment action against him, and a causal link exists between the two." *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018) (citation omitted). To engage in protected activity, an employee's "complaint must 'be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Id.* (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). "The rights protected by the FLSA are those found in the statute's wage-and-hours provisions . . . [which] require employers to pay a minimum wage and overtime compensation to all nonexempt employees." *Id.* at 894–95 (citing 29 U.S.C. §§ 206–207).

Urban argues that he engaged in FLSA protected activity "when he participated in a wage study in March of 2022, and then complained to Brinkman when the wages were still insufficient." Pl.'s Br. in Opp'n at 23; Am. Compl. ¶¶ 33–41. He then complained to a Town Board Supervisor after being discouraged from doing so by Brinkman. After a wage increase was granted for the Utility Department, Urban claims he then became involved in advocating for higher wages for the Streets Department and complained about it to Brinkman in early 2023. *Id.* Urban claims that Brinkman launched the investigation of his conduct that eventually led to his termination in retaliation for his complaints over pay.

The fatal defect in this part of Urban's claim is that none of these actions constitute statutorily protected activity under the FLSA. A complaint "about the fact that in his opinion he and the other employees of the Utility Department were still being underpaid in relation to other municipalities" does not, without more, reasonably suggest an assertion of statutorily protected rights. Am. Compl. ¶ 36. The FLSA protects a right to a minimum wage and overtime compensation, not a right to what in Urban's opinion might be a fair wage as compared to other municipalities. Similarly, after the wages in the Utilities Department were raised, his complaint that the Streets Department employees should be getting similar raises was unprotected because the FLSA does not protect a right "to improve the work environment" among departments. *Id.* ¶ 43.

Urban also asserts a claim for unpaid overtime wages, however, alleging that his "duties extended beyond the normal work day." Am. Compl. ¶¶ 29. He alleges that because he was the only employee who held a water distribution license issued by the State of Wisconsin, the Town required him to be available 24 hours per day, seven days per week, and to carry with him a mobile phone provided by the Town that was known as "the foreman phone." *Id.* ¶¶ 25, 30. Urban asserts he was not compensated for "the on-call time that he worked by virtue of having to carry the foreman phone and being the only licensee." *Id.* ¶ 204.

Whether "on call" time is treated as work "depends on whether one has been 'engaged to wait' or is 'waiting to be engaged.'" *Dinges v. Sacred Heart St. Mary's Hosps., Inc.*, 164 F.3d 1056, 1056–57 (7th Cir. 1999). The Department of Labor's implementing regulations provide:

> An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to

13

return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(d). As the Seventh Circuit has noted, the analysis is highly fact-intensive: "[f]or most purposes it is best to ask what the employee can do during on-call periods. Can the time be devoted to the ordinary activities of private life? If so, it is not 'work.'" *Dinges*, 164 F.3d at 1057.

Although this analysis can be highly fact-intensive, it is clear from the allegations of the amended complaint that Urban is claiming his work hours included each and every hour of the day just because he was required to carry a phone with him so he could be reached in case of emergency. This is not the law. As the Seventh Circuit explained in rejecting a similar claim:

> The call-out procedure does not require that the worker stay at home or at any other designated location, but only that he be reachable by the company, and [29 C.F.R. § 553.221(d)] . . . goes on to provide that "an employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call."

*Jonites v. Exelon Corp.*, 522 F.3d 721, 723–24 (7th Cir. 2008) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944)). Thus, to the extent Urban is asserting a claim for unpaid compensation under the FLSA, it clearly fails.

As to the claim that his termination was in retaliation for his FLSA claim for his on-call time, there is no allegation in the amended complaint that Urban ever made such a claim before his termination. Urban notes in his Brief in Opposition that he alleged in his original complaint, which was filed on October 28, 2023, that he was not being paid for his on-call time and his termination occurred shortly thereafter on November 16, 2023. Pl.'s Br. in Opp'n at 24 (citing Compl. ¶ 5). But an amended complaint supersedes an original complaint and renders the allegations of the original complaint void. *Flannery v. Recording Industry Ass'n of America*, 354

F.3d 632, 638 n.1 (7th Cir. 2004) ("It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void."). Therefore, based on the allegations of the amended complaint, Urban's FLSA retaliation claim will be dismissed.

Urban's FLSA claim, like his other federal claims, will be dismissed with prejudice. Urban has already amended his complaint once, but only after the defendants filed their first Rule 12(b)(6) motion to dismiss, and he has not sought leave to amend again. Defendants should not have to expend further time and money defending against yet a third complaint. Moreover, even if the court were to consider the allegations in his original complaint, Urban's retaliation claim would still likely fail. "For [his] conduct to be protected, [he] must have had a good faith belief that [his termination] violated the FLSA." *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 895 (7th Cir. 2018). Given the remaining 223 allegations of Urban's amended complaint, it is doubtful that even he believes the two allegations about his on-call time, Am. Compl. ¶¶ 30, 204, had any bearing on the decision to terminate his employment. Finally, Urban's allegations fail to support an inference that he held a good-faith belief that his termination was retaliatory because they do not plausibly support the underlying overtime claim. For all of these reasons, his FLSA claims will be dismissed.

### E. Breach of Contract and Defamation Claims

What remains are Urban's breach of contract and defamation claims under state law. When federal claims are dismissed, federal courts may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3); *see Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Seventh Circuit has described a "sensible presumption that if the federal claims drop out *before*

*trial*, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 & n.7 (7th Cir. 1999) (noting that the rule is dismissal unless state claims are frivolous or a "no brainer"). Because nothing suggests that the presumption should be ignored here, the court declines to exercise supplemental jurisdiction over the remaining claims. Accordingly, Urban's state law claims for breach of contract and defamation will be dismissed without prejudice so that they may be pursued in a state forum.

**F. Motion for Sanctions**

Defendants move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. They assert that Urban's amended complaint is frivolous and without a good faith basis in fact or law. They seek an award of costs and attorney's fees in defending against Urban's lawsuit.

Rule 11 of the Federal Rules of Civil Procedure provides that an attorney who presents a pleading to the court, "whether by signing, filing, submitting, or later advocating it," certifies that

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

The purpose of Rule 11 is to discourage baseless filings and to "streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S.

16

384, 393 (1990). It imposes a set of duties and "provides for an appropriate sanction to be imposed if those duties are violated." *Novoselsky v. Zvunca*, 324 F.R.D. 197, 202 (E.D. Wis. 2017). "Sanctions will be imposed if counsel files a complaint with improper motives or without adequate investigation." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002). "An attorney cannot avoid sanctions by claiming subjective good faith if a reasonable inquiry into the facts and law would have revealed the frivolity of the position." *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019) (citation omitted). In determining whether sanctions are warranted, "[t]he court must undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (citation and internal quotation marks omitted). The Seventh Circuit has cautioned that "a court must take care not to penalize arguments for legal evolution," *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir. 1987), and that "Rule 11 cannot be allowed to thoroughly undermine zealous advocacy," *Kraemer v. Grant Cnty.*, 892 F.2d 686, 690 (7th Cir. 1990).

Although the court concludes that Urban's federal claims should be dismissed, they were not so frivolous or groundless such that sanctions are appropriate. The issues of whether a government employee has a protected interest in his continued employment and whether speech, especially speech to an elected official, is protected are not so clearly established that the court can find that an attorney could not reasonably conclude that Urban's claims were frivolous. Likewise, Urban's FLSA claims were not, in the court's view, frivolous. Urban's Fourth Amendment claim borders frivolity, but even as to that claim, Urban presented colorable arguments in opposition to the defendants' motion to dismiss. In short, "[t]he plaintiffs' legal arguments on [all] issues fall . . . short of the 'baseless' threshold that merits Rule 11 sanctions." *Mazurek v. Metalcraft of*

*Mayville, Inc.*, ___ F.4th ___, 2024 WL 3632732, at *6 (7th Cir. Aug. 2, 2024). Though Urban's position was ultimately unsuccessful, it is not sanctionable under Rule 11, as the court is not persuaded that Urban's claims are devoid of any nonfrivolous argument that they are cognizable. Accordingly, while dismissal of his claims under federal law is appropriate because he fails to state claims upon which relief may be granted, the court finds that Urban's assertion of these claims was not frivolous. Thus, Defendants' motion for Rule 11 sanctions will be denied.

## CONCLUSION

For these reasons, Defendants' motions to dismiss the amended complaint (Dkt. Nos. 14 & 19) are **GRANTED**. Urban's federal claims (Counts I, II, III, and IV) are dismissed with prejudice. Urban's state law claims for breach of contract and defamation (Counts V & VI) are dismissed without prejudice. Defendants' motion for sanctions (Dkt. No. 12) is **DENIED**. The case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this <u>19th</u> day of August, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge